# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| PersonalWeb Technologies, LLC § | |
| § | Civil Action No. 6:11-cv-00658 (LED) |
| Plaintiff, § | |
| v. § | **JURY TRIAL REQUESTED** |
| § | |
| Amazon.com, Inc.; § | |
| Amazon Web Services LLC; and, § | |
| Dropbox, Inc. § | |
| § | |
| Defendants. § | |
| § | |

**PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S CORRECTED RESPONSE
IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE**

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................ 1

II. FACTUAL BACKGROUND ........................................................................................... 1

    A. PersonalWeb's Ties to Tyler, Texas ..................................................................... 1

    B. Witness Ties to Tyler, Texas ................................................................................. 3

    C. The Defendants' Ties to Texas and to the Eastern District of Texas ..................... 4

III. LEGAL STANDARD ....................................................................................................... 5

IV. TRANSFERRING THIS CASE TO CALIFORNIA IS NOT CLEARLY WARRANTED ................................................................................................................... 5

    A. The Local Interest of the Eastern District of Texas Weighs Against Transfer. ....... 5

    B. Access To Sources Of Proof Weighs Strongly Against Transfer. ......................... 8

        *1. Defendants Ignore Substantial Sources of Party Proof Outside of the NDCA—Including a Large Amount in Texas* .......................................... 8

        *2. The Defendants Ignore Substantial Sources of Non-Party Proof Outside of the NDCA—Including a Large Amount in Texas.* .................... 10

    C. The Availability of Compulsory Process Weighs Against Transfer. .................... 11

    D. The Cost of Attendance for Willing Witnesses Weighs in Favor of Keeping the Case in this District ........................................................................... 11

    E. The "Practical Problems" Factor Weighs Against Transfer. ................................ 12

    F. The "Administrative Difficulties" Factor Weighs Against Transfer. ................... 12

    G. Judicial Economy Favors Keeping the Case in this District ................................ 12

V. PERSONAWEB IS NOT "ESTOPPED" FROM ARGUINGTHAT CALIFORNIA IS NOT A MORE CONVENIENT FORUM ...................................................................... 14

VI. CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Balawajder v. Scott*,
　160 F.3d 1066 (5th Cir. 1998) ...................................................................................................5

*Balthaser Online, Inc. v. Kimberly-Clark Corp.*,
　Civil Action No. 2:09–188–TJW, 2011 WL 1235143 (E.D. Tex. Mar. 30, 2011)..................11

*Data, LLC v. Packeteer, Inc.*,
　2009 U.S. Dist. LEXIS 81067 (E.D. Tex., Mar. 5, 2009) (Love, J.) ..................................9, 11

*Eolas Techs., Inc. v. Adobe Sys., Inc.*,
　2010 U.S. Dist. LEXIS 104125 (E.D. Tex. Sept. 28, 2010) ......................................................7

*Hall v. GE Plastic Pac. PTE, Ltd.*,
　327 F.3d 391 (5th Cir. Tex. 2003) ...........................................................................................14

*In re Volkswagen of Am., Inc.*,
　545 F.3d 304 (5th Cir. 2008) ...............................................................................................5, 12

*In re Volkswagen I*,
　371 F.3d ....................................................................................................................................8

*In re Zimmer Holdings, Inc.*,
　609 F.3d 1378 (Fed. Cir. 2010)..................................................................................................6

*MHL TEK, LLC v. Nissan Motor Co.*,
　No. 2:07-CV-289-TJW, 2009 U.S. Dist. LEXIS 13676 (E.D. Tex. Feb. 23, 2009),
　mandamus denied by *In re Volkswagen of Am.*, 566 F.3d 1349 (Fed. Cir. 2009) ...............5, 13

*Motorola, Inc. v. Vtech Communications, Inc.*,
　No. 5:07-CV-171 .......................................................................................................................9

*Personal Audio, LLC v. Apple, Inc.*,
　No. 9:09-CV-111, 2010 U.S. Dist. LEXIS 11899 (E.D. Tex. Feb. 11, 2010) ...........................7

McKool 440547v1

Plaintiff PersonalWeb Technologies LLC ("PersonalWeb") opposes the motion to transfer venue, Dkt. No. 13 ("Motion" or "Mot."), from the Eastern District of Texas (the "EDTX") to the Northern District of California (the "NDCA") filed by Amazon.com, Inc.; Amazon Web Services LLC (collectively, "Amazon"); and Dropbox, Inc. ("Dropbox") (collectively, the "Defendants").

## I.  INTRODUCTION

Defendants' Motion should be denied.  To succeed, Defendants must demonstrate that the NDCA is clearly more convenient than the EDTX as the forum for this case, in which PersonalWeb asserts patent infringement claims based on the eight patents in suit (collectively the "Truenames patents.").  As detailed below, Defendants cannot meet their heavy burden for five reasons.  First, PersonalWeb has strong, extensive, and exclusive ties to this judicial district.  Second, Defendants' arguments regarding PersonalWeb's founders' ties to California are wholly contrived and legally irrelevant.  Third, the location of documents and witnesses relevant to PersonalWeb disfavor any transfer.  Fourth, Amazon and Dropbox overstate their ties to California and understate their ties elsewhere  In fact, Amazon is based in Washington, and PersonalWeb's claims against Dropbox are based entirely on its use of Amazon's infringing Washington-based service.  Fifth, PersonalWeb filed six separate cases in this Court asserting the same portfolio of patents; as such, if this Court were to transfer venue in any of the related cases, at least two cases will still remain here, resulting in duplicative judicial work and the risk of inconsistent judicial determinations and inconsistent jury verdicts.

## II.  FACTUAL BACKGROUND

### A.  PersonalWeb's Ties to Tyler, Texas

PersonalWeb has been incorporated in Smith County, Texas since 2010.  Weiss Decl. at ¶ 3. PersonalWeb's Chief Executive Officer, Michael Weiss, and Chief Technology Officer,

Wasef Kassis, both reside in Tyler, Texas. *Id*. at ¶¶ 5, 7. PersonalWeb's four other full-time employees, including Director of Technology Charles Thomas and Software Developer Bill Zink, all live in Tyler, Texas. PersonalWeb's main servers are located in a Tyler, Texas datacenter. *Id*. at ¶ 7. PersonalWeb has nine part-time employee, including paid student interns, all located in Tyler. *Id*. at ¶ 8. PersonalWeb leases 3,740 sq feet of office space in downtown Tyler pursuant to a long term lease where all its employees conduct business. All of PersonalWeb's tangible and intangible property, including all of the company's electronic and non-electronic files, books, and records, are located in Tyler. *Id*. at ¶ 11. Specifically, PersonalWeb's main servers are located in a secure Tyler datacenter, PersonalWeb's development servers are located in downtown Tyler, and PersonalWeb's bandwidth for its servers is provided by a local Tyler ISP provider. *See* id. In addition, PersonalWeb is currently testing its StudyPods product with students from UT Tyler through a beta-testing program utilizing Smith County residents. *Id*. at ¶ 8. PersonalWeb also operates a Capstone project with the UT Tyler where students help design and create elements of PersonalWeb's products. *Id*.

In 2011, PersonalWeb's accounting firm, a local Tyler firm owned in part by the current mayor of Tyler, filed PersonalWeb's federal and state tax returns. *See* id. at ¶ 10. A local Tyler architect, DeWayne Manning, designed the Company's offices and oversaw its renovation and leasehold improvements. *See* id. PersonalWeb has been a member of the Tyler Chamber of Commerce since September 2010. *See* id. at ¶ 4. PersonalWeb's CEO Michael Weiss is a member of, and regularly attends the meetings of, the Technology Committee of the Tyler Chamber of Commerce. *See* id. at ¶ 6. Mr. Weiss is also a member of Greater East Texas IT Professionals (GET IT). *See* id. PersonalWeb's employees are all active participants in the community and the social fabric of Smith County and Tyler Texas. *See* id. at ¶¶ 7-8.

McKool 440547v1

PersonalWeb acquired the eight of the Truenames patents pursuant to assignments between Kinetech and PersonalWeb dated July 5, 2011, the closing of which was briefly delayed and occurred prior to the recordation of the assignment of the Truenames patents with the U.S. Patent and Trademark Office ("PTO").  PersonalWeb recorded the assignment at the PTO on September 2, 2011.  At that time, the documents and records related to the Truenames patents were acquired by PersonalWeb and transferred to PersonalWeb's offices in Tyler.  Subsequently, two additional Truenames patents were issued directly to PersonalWeb.  Weiss Decl. at 12, Exs. A.32-A.35.

### B. Witness Ties to Tyler, Texas

A number of relevant third-party witnesses, including one of the co-inventors of all eight Truenames patents, live closer to this judicial district than to California.  Both co-inventors, as well as officers of third-party companies identified in Defendants' motion to transfer, have agreed to travel to Tyler if their testimony is needed and have represented that doing so would not pose any inconvenience.  See Farber Decl., Lachman Decl. Siritzky Decl.. Weiss Decl., Bermeister Decl., Dyne Decl., Markiles Decl., and Neumann Decl.  Defendants assert that one of the named inventors, Ronald Lachman, has ties to California-based companies.  But Mr. Lachman resides in Illinois, and he has no day-to-day responsibilities for the operations of any company located in California.  See Lachman Decl. at ¶ 3.

Defendants also claim that prior co-owner of the Truenames patents (Digital Island) and a licensee of the Truenames patents (Audible Magic) are located in California.  (Mot. at 8, 12.)  But Digital Island's rights in the Truenames patents were wholly transferred to Level 3 Communications, based in Broomfield, Colorado.[1]  Level 3 also has a number of offices located

---

[1] Defendants argue that this case will require interpretation of California law because the agreement between Kinetech and Digital Island contains a California choice of law provision,

in Texas, including one office located in this District. Ex. A.31. Further, Defendants offer no reason why any licensee such as Audible Magic, would be required to testify as trial. In any event, the Truenames patents have been licensed to companies throughout the country. Finally, the attorney (Brian Siritzky) who drafted the Kinetech/Digital Island agreement, and who also prosecuted the Truenames patents before the Patent and Trademark Office, resides in Maryland, and has agreed to attend trial in Texas if needed. Siritzky Decl. at ¶¶ 4, 8.

### C. The Defendants' Ties to Texas and to the Eastern District of Texas

The accused services at issue in this case have no ties to California. Amazon is based in Seattle, Washington, and admits that all information regarding its accused S3 and ElastiCache services is located in Seattle. Although Dropbox is based in San Francisco, California, PersonalWeb's claims against Dropbox solely pertain to Dropbox's use of Amazon's S3 service. Dropbox points to no documents or witnesses in California that will be required to address the technical details of Amazon's S3 service relevant to the inventions claimed in the Truenames patents.

Further, Defendants have many ties to Texas. Amazon.com has maintained offices in the Texas cities of Irving and Carrollton. See Exs. A.1-A.4. Amazon.com's Carrollton facilities are Denton County and are therefore in the EDTX. See Ex. A.6. Numerous former and current Amazon.com employees currently work and reside in Texas. Specifically, there are 100 people who claim to be current or past employees of Amazon.com within a 100-mile radius of the ZIP code 75702. See Ex. A.5. As stated in its Complaint, Defendant Dropbox infringes through its use of Amazon.com's web services. See Dkt. No. 1.

---

and PersonalWeb did not join Level 3 (Digital Island's successor under the agreement) in this case. But in an amended complaint, Level 3 has now joined as a plaintiff. Thus, even assuming Defendants were correct about the need to interpret California law, there is no longer any issue in this case that will require application of California law.

4

### III. LEGAL STANDARD

The district court has "broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank,* 811 F.2d 916, 919 (5th Cir. 1987). The party seeking to transfer venue must show "good cause" for the transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*In re Volkswagen II*"). To demonstrate "good cause," a movant "must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Id.* (citations omitted). The plaintiff's choice of forum is the reason a movant must meet a high burden to obtain transfer. *Id*. at 315 n.10. "Thus, when ***the transferee venue is not clearly more convenient than the venue chosen by the plaintiff***, the plaintiff's choice should be respected." *Id*. at 315 (emphasis added); *see also MHL TEK, LLC v. Nissan Motor Co.*, No. 2:07-CV-289, 2009 U.S. Dist. LEXIS 13676, at *13 (E.D. Tex. Feb. 23, 2009), mandamus denied by *In re Volkswagen of Am.*, 566 F.3d 1349 (Fed. Cir. 2009) ("*In re Volkswagen III*"). The Fifth Circuit applies the public factors and private factors set forth in *In re Volkswagen II*, 545 F.3d at 315, to determine forum motions. These factors are not exhaustive or exclusive and "none . . . can be said to be of dispositive weight." *Id*.

### IV. TRANSFERRING THIS CASE TO CALIFORNIA IS NOT CLEARLY WARRANTED

#### A. The Local Interest of the Eastern District of Texas Weighs Against Transfer.

PersonalWeb is incorporated in Texas and operates its business in Tyler. PersonalWeb's presence—indeed its only presence—is in this District through its facilities, operations and employees. Defendants also maintain a significant presence in Texas through their operations, offices, and employees. For these reasons, local interests favor keeping the case in this district.

Since its creation in Texas in 2010, PersonalWeb has engrained itself into the local

5

business community in Tyler, Texas. PersonalWeb's extensive ties to the District are detailed in § II.A, *supra*, and in the Declaration of Michael Weiss, PersonalWeb's CEO.

Defendants argue that the Court should give **no weight** to PersonalWeb's significant ties to the EDTX based on their assertion that PersonalWeb's ties to EDTX are "clearly strategic" and motivated solely by litigation considerations. (Mot. at 10.) Defendants' assertion not only lacks support, it entirely ignores PersonalWeb's substantial and extensive business operations in Tyler.

The authorities that Defendants cite for ignoring PersonalWeb's substantial connections to Tyler and its choice of forum are entirely inapposite. For example, Defendants cite *Hoffman-LaRoche, Inc.*, 587 F.3d 1333 (Fed. Cir. 2009). (Mot. at 10.) But the *Hoffman* decision rested in the Federal Circuit's observation that there "appear[ed] to be no connection between [the] case and the Eastern District of Texas," except 75,000 pages of documents in electronic format that plaintiff had transferred to the district in anticipation of litigation. *Id*. at 1337. Unlike *Hoffman*, PersonalWeb's ties to Tyler are manifest and substantial. Over the past two years, PersonalWeb has created a business and, with the assistance of UT Tyler, has developed technology products using the inventions claimed in the patents at issue in this case. Defendants offer no evidence disproving these facts.

Defendants' reliance on *In re Zimmer Holdings*, *Inc*., 609 F.3d 1378 (Fed. Cir. 2010), is equally misplaced. (Mot. at 10.) The Federal Circuit based its decision in *Zimmer* on the fact that the plaintiff's presence in Texas was "recent, ephemeral, and an artifact of litigation." *Id*. at 1381-82. PersonalWeb's business operations in Tyler cannot be fairly characterized as recent, ephemeral, or an artifact of litigation. Even if PersonalWeb had just located in Tyler (which it did not), this Court has rejected the notion that some "waiting" period exists before a plaintiff

6

can enforce its intellectual property after establishing a business in this judicial district. *Personal Audio, LLC v. Apple, Inc.*, No. 9:09-CV-111, 2010 U.S. Dist. LEXIS 11899, at *10 (E.D. Tex. Feb. 11, 2010) (denying a motion to transfer, noting that the Court "found neither a statute that states, nor a case that holds, that there is a mandatory waiting period in which a plaintiff cannot file suit in a judicial district after incorporating in that district.").[2]

Unlike *Hoffman* and *Zimmer*, the facts here are entirely in line with this Court's recent *Eolas* decision. *Eolas Techs., Inc. v. Adobe Sys., Inc.*, 2010 U.S. Dist. LEXIS 104125 (E.D. Tex. Sept. 28, 2010). Just as Defendants argue here, the defendants in *Eolas* contended that the Eolas' location within the Eastern District of Texas should be disregarded because it was recent and insubstantial. *Eolas Technologies,* 2010 U.S. Dist. LEXIS 104125 at *20-21. This Court rejected the defendants' request to ignore Eolas' connection to the Eastern District of Texas because the evidence showed that Eolas was truly conducting its normal business in the judicial district and had genuinely relocated its business to Texas. *Id.* The facts here are not as close as in *Eolas*. PersonalWeb did not "recently" relocate to Tyler. PersonalWeb established its business in Tyler from the outset two years ago; PersonalWeb's CEO and Chief Technology Officers reside in Tyler, and all its employees reside in the Tyler area. It is substantially more convenient for PersonalWeb to maintain this action here rather than in California.

PersonalWeb's substantial connection to the EDTX weighs the "local interest" factor heavily against transfer.

---

[2] Defendants argue that *Hoffman* and *Zimmer* are on point because PersonalWeb acquired the Truenames patents about six months before filing this action. This argument stems from a mistaken belief that the relevant consideration is how long a plaintiff has owned the property that is subject of litigation rather than the extent of a plaintiff's ties to the District. As demonstrated, PersonalWeb has extensive business ties to the District that predated its acquisition of the Truenames patents. How long PersonalWeb has owned the Truenames patents is not a factor in determining whether California clearly is a more convenient venue for this case.

7

### B. Access To Sources Of Proof Weighs Strongly Against Transfer.

#### 1. Defendants Ignore Substantial Sources of Party Proof Outside of the NDCA—Including a Large Amount in Texas

Significant sources of proof relevant to the issues in this case are located in this judicial district. All of PersonalWeb's party witnesses are located at its headquarters in Tyler, and Mr. Weiss details the sources of proof in his declaration. See Weiss Decl. at ¶¶ 2, 7-8, 11.[3] Contrary to Defendants' assertion, these sources of proof are highly relevant to whether Defendants meet their burden of proving that a transfer is "clearly" warranted. *See In re Volkswagen I,* 371 F.3d at 204 (considering all of the parties and witnesses and claims and controversies in the case in the transfer analysis).

Conversely, the Northern District of California is entirely inconvenient for PersonalWeb and the trial of this matter. PersonalWeb has no relevant documents and litigation materials in California. *Id*. at 11. In arguing that California would be a convenient forum for PersonalWeb, Defendants point only to the fact that PersonalWeb's parent company and the prior owners of the Truenames patents have ties to California. (Mot. at 4, 8-10.)[4] But PersonalWeb was formed in

---

[3] Defendants speculate that "the most relevant information related to the patents-in-suit is located in California because PersonalWeb's chairman, Bermeister, said so" in a declaration from a prior case. (Mot. at 9.) Defendants' speculation is wrong. Mr. Bermeister's declaration was made in a prior case years ago, when a different company owed the Truenames patents. Not surprisingly, the location of the "relevant information" relating to the patents were transferred to the new owner, PersonalWeb, upon closing of the transfer agreement and the recording of the new assignments in the PTO. Weiss Decl., at ¶ 12. Moreover, the "relevant information" relating to the patents makes up only a fraction of PersonalWeb documents that Defendants will undoubtedly seek in this case. Defendants entirely ignore the documents relating to the development of its products, which utilize the Truenames patents. These documents were created in Tyler and have always been maintained in Tyler. *Id*. at ¶ 11.

[4] Defendants also speculate that Mr. Bermeister and BDE are "behind these patents" because BDE issued a press release announcing the issuance of new Truenames patents the day after signing the patent assignment to PersonaWeb. (Mot. at 4.) But as discussed above, the closing of transfer to PersonalWeb occurred after BDE issued the press release, and prior to September 2, 2011 when PersonalWeb recorded the assignment of the Truenames Patents with the PTO. Thus, the fact that BDE, and not PersonalWeb, announced the issuance of new Truenames patents in July 2011 provides no evidence that the patents are owned or controlled in California.

Tyler over nine months before it acquired the Truenames patents from Kinetech in July 2011, and was a functional company before it owned any interest in the Truenames patents. Thus, Defendants' assertion that BDE is the "real party in interest," (Mot. at 11), is nothing more than lawyer argument that ignores the actual facts.

Further, only one BDE employee works in California, with the only other officer working and residing in Australia. Bermeister Decl. Neither Kinetech nor Altnet have any direct employees. *Id*. Mr. Bermeister resides in Sydney, Australia, and Anthony Neumann, the employee located in California, likely has no knowledge relevant to this lawsuit. *Id*. And both have stated that they are willing to travel to this District if necessary and that doing so would pose no hardship. Bermeister Decl., Neumann Decl.

Defendants' arguments about PersonalWeb's parent company and the prior owners of the Truenames patents also are legally irrelevant. The correct inquiry is where the parties' sources of proof are located, not where founders, parents, and prior patent owners are located. *See Data, LLC v. Packeteer, Inc.*, 2009 U.S. Dist. LEXIS 81067, at *24 (E.D. Tex., Mar. 5, 2009) (Love, J.) ("While Defendants point to the Northern District of California as the location for a significant source of proof, they ignore the remaining sources of proof which originate from numerous locations."). *See also Motorola, Inc. v. Vtech Communications, Inc.*, No. 5:07-CV-171, at *5-6 (E.D. Tex. August 3, 2009) ("VTech would also have this Court . . . discount VTech's San Antonio facility and any relevant evidence located therein … The Federal Circuit's recent case law, however, suggests that such findings are inappropriate.").

Moreover, Defendants conspicuously ignore their own presence and potential sources of proof in Texas, which PersonalWeb details in § II.C, *supra*.

9

### 2.     *The Defendants Ignore Substantial Sources of Non-Party Proof Outside of the NDCA—Including a Large Amount in Texas.*

Defendants argue that a number of relevant third party witnesses reside in California. (Mot. at 6-8, 12-13.)  First, Defendants point to a number of alleged prior art witnesses who allegedly reside in California. (Mot. at 7.)  The location of alleged witnesses in a few select prior art patent references hardly warrants material consideration.  The patents-in-suit cite hundreds of prior art references with hundreds of inventors residing throughout the United States.  In fact, a review of the cited references reveals thirty-eight inventors in sixteen patents who reside in Texas.  *See* A.13-A.28.  Thus, it is apparent that the location of sources of proof related to potential prior art and non-party witnesses with potential information on prior art does not favor transfer.

Second, Defendants identify Audible Magic and the former Vice President and General Counsel of Digital Island as relevant third party witnesses who reside in California.  (Mot. at 7-8.)  Yet Audible Magic is a mere licensee.  There is no reason Audible Magic's testimony would be needed at trial.  Further, the Truenames patents have been licensed to a number of others around the country, so the location of licenses (even if the unlikely event a party required their testimony at trial) does not favor transfer to the NDCA.  Likewise, there is no need for the testimony of Digital Island's former Vice President.  Digital Island transferred its interest in the patents to Level 3, who has joined as a party in the amended complaint.  In any event, the attorney who drafted the agreement between Kinetech and Digital Island, Brian Siritzky, resides in Maryland.  Mr. Siritzky also prosecuted the patents-in-suit before the Patent and Trademark Office, and he is willing to attend trial if necessary in Texas.  Siritzky Decl., at ¶¶ 4-8

Where, as here, the parties have identified potential non-party witnesses in the current judicial district and the proposed transferee districts, this factor does not favor transfer.  *See*

10

*Balthaser Online, Inc. v. Kimberly-Clark Corp.*, Civil Action No. 2:09–188–TJW, 2011 WL 1235143, at *3 (E.D. Tex. Mar. 30, 2011) ("Given that both parties have identified potential non-party witnesses in both districts, the Court finds that this factor is neutral."). Because (even accepting, *in arguendo,* Defendants arguments) this lawsuit has material sources of proof in the Eastern District of Texas as well as in California (as well as in other districts), this factor weighs against transfer of the entire action from the EDTX to the NDCA.

  C.  **The Availability of Compulsory Process Weighs Against Transfer.**

  PersonalWeb and its employees reside in Texas. Even the Defendants have operations in Texas. Defendants assert that the co-inventors of the patents at issue, David Farber and Ron Lachman, as well as allegedly relevant third-party employees of BDE, Kinetech, and Altnet, are subject to the subpoena power of the NDCA. (Mot. at 12.) But Mr. Lachman, who resides in the Chicago area, is not subject to compulsory process in the NDCA. Nor is Mr. Bermeister, who resides in Australia. Even if the officers and employees of Altnet, Kinetech, and BDE had relevant information to this case (which is highly unlikely), each have provided declarations agreeing to appear in this District to testify. Thus, compulsory process is available in the EDTX for at least as many witnesses as would be subject to compulsory process in the NDCA. *See Data, LLC*, 2009 U.S. Dist. LEXIS 81067, at *32 (finding this factor did not favor transfer to the NDCA and stating "it is clear that neither this District, nor the Northern District of California, has absolute subpoena power over all non-party witnesses.").

  D.  **The Cost of Attendance for Willing Witnesses Weighs in Favor of Keeping the Case in this District**

  As explained above, this case is not regional to the NDCA. This case is a nationwide patent infringement suit that involves witnesses with relevant knowledge located across the country. In evaluating this factor, courts generally consider distances witnesses must travel to

McKool 440547v1

reach respective venues. *See In re Volkswagen II*, 545 F.3d at 317. This factor does not support transfer where, as here, transfer would merely enhance the convenience of some witnesses while inconveniencing others.

### E. The "Practical Problems" Factor Weighs Against Transfer.

The most significant aspect of the "practical problems" factor, *In re Volkswagen II*, 545 F.3d at 315, is the cost associated with the actual trial itself. As a trial proceeds, "[w]itnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community." *Id.* at 317. The NDCA conducts notably longer trials than the EDTX. Thus, even disregarding the inefficiency inherent in transfer, lengthier proceedings in the NDCA would yield a cost disparity relative to the EDTX that weighs against transfer. Further compounding the cost disparity, food and lodging are significantly less expensive in the EDTX than in the NDCA.

### F. The "Administrative Difficulties" Factor Weighs Against Transfer.

Defendants rely on misleading statistics for this factor. The data that Defendants present is the median time intervals from filing to *disposition* of civil cases. *See* Dkt. No. 13-30. Time to disposition is obviously not the same as time to trial. In any event, according to the most recent data, the median time to jury trial in the Eastern District of Texas is 23.7 months, while the median time to trial in the Northern District of California is 34.3 months. *See* Ex. A.29 at 66 and 35.

### G. Judicial Economy Favors Keeping the Case in this District

Dutifully following the dictates of the America Invents Act, PersonalWeb has filed six other cases in this District involving the same eight patents at issue in this case. Even considering each of these cases individually, this District is the most convenient venue. In at least two of the related cases – *PersonalWeb v. Caringo, Inc.* (6:11-cv-00659) and *PersonalWeb*

12

*v. NEC Corp. of Am., Inc.* (6:11-cv-00655) – the defendants are located in Texas and they have not sought to transfer the cases to California.

The fact that at least two of the related cases will remain in this judicial district, even if this case is transferred to California, weighs heavily against transfer. Judicial and party resources will be wasted if Courts in two different jurisdictions, located over 1000 miles apart, must decide the same issues such as claim construction and validity. By keeping all related cases in one jurisdiction, this Court can hold joint proceedings on certain common legal issues that will conserve scarce judicial resources. Moreover, joint proceedings on common legal issues will avoid the possibility of inconsistent jury verdicts. In such situations, the Federal Circuit has recognized that this factor may outweigh all others in denying a motion to transfer. *In re Volkswagen III,* , 566 F.3d at 1351 (denying mandamus relief of district court's denial of motion to transfer, which was " based on the rational argument that judicial economy is served by having the same district court try the cases involving the same patents").[5] This paramount concern is applicable here.

Defendants refer to the "extensive litigation history" of the patents at issue here in California. That is advocate hyperbole when the actual facts are considered. Of the four cases identified by Defendants, only one was filed in the Northern District of California and none of the four even reached a hearing on claim construction. The one case filed in the Northern District of California was transferred to the District of Massachusetts at the outset, before claim

---

[5] This case differs from Magistrate Judge Craven's recent decision to transfer a case to the Southern District of New York in *Droplets, Inc. v. E-Trade Financial Corp., et al*. In *Droplets*, the Court granted the motion to transfer despite the existence of co-pending cases in the EDTX. The Court based its decision on the fact that the co-pending cases differed with respect to the allegations pled and the types of defendants. In contrast, PersonalWeb's claims in the related cases all involve the same infringing technology (*i.e*., cloud-based file management and storage) against defendants in the same business (providers of cloud-based file management and storage systems).

13

construction briefing took place. At least two of the Central District of California cases barely made it past the pleading stage. Although one of those cases (Limewire) did go on for some time, that was because the district court stayed the case after Limewire succeeded in placing one of the patents into reexamination before the Patent Office. In fact, the only district court ever to construe claims and try a case involving one of the patents-in-suit is the District Court in Massachusetts, which occurred many years ago. Thus, the prior litigation provides little if any support for a transfer to California.

## V. PERSONALWEB IS NOT "ESTOPPED" FROM ARGUING THAT CALIFORNIA IS NOT A MORE CONVENIENT FORUM

Defendants argue that PersonalWeb is "estopped from arguing that California is not the more convenient forum given Bermeister's sworn declaration in opposition to a motion to transfer a case involving on of the patents-in-suit out of California" (i.e., in the *Limewire* action). (Mot. at 14-15.) This argument is nonsense.

In the Fifth Circuit, "judicial estoppel 'prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.'" *Hall v. GE Plastic Pac. PTE, Ltd.*, 327 F.3d 391, 395 (5th Cir. Tex. 2003) (quoting *Ergo Science, Inc. v. Martin*, 73 F.3d 595, 600 (5th Cir. 1996)). Thus, judicial estoppel requires three elements: (1) the same party in a prior action and a current action, (2) the party taking an inconsistent position with the position taken in the prior action, and (3) the party prevailing in the prior inconsistent position.

None of the elements are satisfied in this case. PersonalWeb plainly was not a party in the prior case. Accordingly, it could not have taken a position inconsistent with the position taken in this case. And PersonalWeb could not have prevailed in the prior case because it was not a party.

14

Moreover, there nothing "inconsistent" with the declaration provided by Mr. Bermeister in the prior *Limewire* case and the position taken by PersonalWeb in this case. In the *Limewire* case, the prior owners of one of the Truenames patents (Kinetech and Alnet) successfully opposed a motion to transfer the case from California to New York. In his declaration supporting the opposition, Mr. Bermeister testified that Altnet and Kinetech were small businesses located in California, that its relevant files, software and business operations were located in Los Angeles, and that litigating the case in New York would impose a substantial hardship on Kinetech and Altnet. Since the patents have been transferred to a new owner in Texas, the relevant patent files have been transferred to Texas. Moreover, as a company founded in Texas, all PersonalWeb's employees and documents, including its software, technical documents, and financial information, always have been located in Texas – just like Altnet's business records were located in California. Thus, the same reasons that commended keeping the case in Los Angeles when the patents were owned by Altnet and Kinetech now commend keeping this case in the EDTX – the location of PersonalWeb.

## VI. CONCLUSION

The Defendants' Motion is premised on attorney argument devoid of facts. The strong local interest in EDTX, the presence of witnesses and relevant documents in Texas, and judicial economy of keeping all of PersonalWeb's cases together in one district to assure single judicial rulings and consistent jury verdicts, favor denial of the Motion. Defendants have failed to demonstrate that either the Northern District of California is "clearly more convenient" for litigation of PersonalWeb's infringement claims. Defendants' motion should be denied.

DATED:  April 12, 2012

Respectfully submitted,
**McKOOL SMITH, P.C.**

  /s/ *Samuel E. Baxter*
Samuel E. Baxter
(sbaxter@mckoolsmith.com)
Texas Bar No. 01938000
104 East Houston Street, Suite 300
P. O. Box. 0
Marshall, Texas  75670
Telephone:  (903) 923-9000
Facsimile:  (903) 923-9095

Theodore Stevenson, III
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
David Sochia
Texas State Bar No. 00797470
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Steve Pollinger
Texas State Bar No. 24011919
spollinger@mckoolsmith.com
McKool Smith, P.C.
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

Roderick G. Dorman (CA SBN 96908)
rdorman@mckoolsmithhennigan.com
Lawrence M. Hadley (CA SBN 157728)
lhadley@mckoolsmithhennigan.com
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone:  (213) 694-1200
Facsimile:  (213) 694-1234

*Attorneys for Plaintiff*
*PersonalWeb Technologies LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3)(A) on April 12, 2012.

>  /s/ Samuel F. Baxter_____
>  Samuel F. Baxter