**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| PERSONALWEB TECHNOLOGIES, LLC. AND LEVEL 3 COMMUNICATIONS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>NEC CORPORATION OF AMERICA, INC.,<br><br>Defendant. | § | Civil Action No. 6:11-cv-00655 (LED)<br><br>JURY TRIAL DEMANDED |
| PERSONALWEB TECHNOLOGIES, LLC. AND LEVEL 3 COMMUNICATIONS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC. AND AMAZON WEB SERVICES LLC,<br><br>Defendants. | § | Civil Action No. 6:11-cv-00658 (LED)<br><br>JURY TRIAL DEMANDED |
| PERSONALWEB TECHNOLOGIES, LLC. AND LEVEL 3 COMMUNICATIONS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>AUTONOMY, INC., HEWLETT-PACKARD COMPANY, AND HP ENTERPRISE SERVICES, LLC,<br><br>Defendants. | § | Civil Action No. 6:11-cv-00683 (LED)<br><br>JURY TRIAL DEMANDED |

**PERSONALWEB'S MOTION FOR PARTIAL RECONSIDERATION OF *MARKMAN* ORDER AS TO A LIMITED ASPECT OF TWO CLAIM TERMS**

# I. INTRODUCTION

PersonalWeb seeks partial reconsideration of the Court's *Markman* Order ("Order") with respect to one aspect of the construction of two terms: "digital identifier" and "data item identifier." The Court construed both terms to require generating an identifier by processing (1) all of the data in the data item and (2) only the data in the data item. PersonalWeb requests that the Court reconsider the second aspect of this construction—that these two terms process **only** the data in the data item. By requiring that the two identifier terms be generated by processing "only" the data in the data item, the construction deviates from the claim language and confines these broader claims to two, more narrow embodiments described in the specification. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed .Cir. 2005) ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.").

The Court construed the terms "digital identifier" and "data item identifier" to be the same as "data identifier," "True Name," and "substantially unique identifier," that is: "An identity for a data item generated by processing all of the data in the data item, and only the data in the data item, through an algorithm that makes the identifier substantially unique." Order at 47.[1] In reaching its construction, however, the Court's analysis focused on the first requirement—whether the terms must be generated by processing at least all of the data in the data item. *See* Opinion at 19 ("The dispute over these terms is whether a digital identifier and a data item identifier must be determined by processing all of the data in a data item, as

[1] PersonalWeb originally proposed that these two terms be given their plain and ordinary meaning, or for "digital identifier," "alternatively, an identifier in digital form," and for "data item identifier," "alternatively, an identifier for a data item." Defendants originally proposed identical exemplary constructions for both terms: "an identifier for access to a data item generated by processing all of the data in the data item, and only the data in the data item, through an algorithm that makes it substantially unique to that data."

Defendants contend, or less than all the data in a data item, as PersonalWeb contends.”). In contrast, the Court’s opinion did not address the second dispute—that the identifier be generated by processing “only” the data in the data item.

The second part of the Court’s construction, requiring that the identifier be generated by processing “only” the data in the data item, deviates from the express language of the claims that expressly recites the ability to use data beyond all of the data in the data item in computing the “digital identifier” and “data item identifier.” Likewise, the specification describes embodiments in which data beyond all of the data in the data item is used to compute identifiers. *See* ’310 Patent, at Claim 86; ’096 Patent, at Claim 81; ’791 Patent, at 13:55-67. Finally, neither the specification nor prosecution history disclaimed the use of data beyond all the data in the data item to generate the identifier. Thus, PersonalWeb respectfully submits that this limited aspect of the Court’s construction should be eliminated, and these two terms be construed as “an identifier for a data item generated by processing all of the data in the data item, through an algorithm that makes the identifier substantially unique.”

## II. LEGAL STANDARD

The Court has the authority to grant a motion for reconsideration under Fed. R. Civ. P. 59(e). *Hamilton v. Williams*, 147 F.3d 367, 379 n. 10 (5th Cir. 1998). Grounds for granting such a motion include: “(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice.” *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002).

Reconsideration is warranted here because of the need to correct a clear error of law. Specifically, the requirement that the terms “digital identifier” and “data item identifier” be generated by processing “only the data in the data item” deviates from the language in the claims containing these terms, and would confine these claims to only two types of preferred

embodiments, one in which only a True Name is used as an identifier and another in which a True Name plus additional information is used as an identifier. *See Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."). PersonalWeb therefore respectfully requests that the Court revisit whether these two terms must process "only the data in the data item."

## III. ARGUMENT

### A. The Court's Construction Would Limit the Claims to a Preferred Embodiment.

The patents-in-suit describe various identifiers that are used to efficiently track, manage, store, and account for data. One such identifier, described in the specification, is determined by processing only the data in the data item. *See e.g.*, '791 Patent, at 39:14-20 ("a substantially unique identifier, the identifier being determined using and depending on all of the data in the data item and only the data in the data item"). Another preferred embodiment generates an identifier by using all and only the data in the data item as one component of the identifier, and additional information that is not content-based as another component of the identifier:

> While the invention is described herein using only the True Name of a data item as the identifier for the data item, **other preferred embodiments** use tagged, typed, categorized or classified data items and use a combination of both the True Name and the tag, type, category or class of the data item as an identifier… This is because the tags provide an additional level of uniqueness.

'791 Patent, at 13:55-67 (emphasis added).

Although the Court's construction of "digital identifier" and "data item identifier" would permit these preferred embodiments, it would rule out other identifiers that are based on more than all the data in the data item. Nothing, however, in the claim language, specification, or prosecution history limits the invention to these preferred embodiments. Accordingly,

PersonalWeb moves the Court to reconsider its construction of "digital identifier" and "data item identifier" to eliminate the "only the data in the data item" language, and to define the terms as "an identifier for a data item generated by processing all of the data in the data item, through an algorithm that makes the identifier substantially unique."

**B. The Court's Construction Deviates from the Claim Language.**

The claim language in which the "digital identifier" and "data item identifier" terms appear does not require that the identifiers be limited only to True Names with no additional data processed through a function in formulating the identifier. Specifically, claim 86 of the '310 Patent expressly recites that a "digital identifier" be based "at least in part" on a data item:

> A device operable in a network of computers, the device comprising hardware, including at least one processor and memory, to: (a) receive at said device, from another device in the network, a digital identifier for a particular sequence of bits, the digital identifier being based, **at least in part**, on a given function of at least some of the bits in the particular sequence of bits, wherein the given function comprises a message digest function or a hash function, and wherein two identical sequences of bits will have the same digital identifier . . . .

'310 Patent, at claim 86 (emphasis added). This language leaves open more information than only the contents of the data item being processed through a function. Claim 81 of the '096 patent contains the same at least in part" language, confirming that data beyond the contents of the data item can be used in the function generating the identifier:

> A computer-implemented method operable in a file system comprising (i) a plurality of servers; (ii) a database; and (iii) at least one computer connected to the servers, the method comprising: obtaining, at said at least one computer, a first data item identifier for a first data item, said first data item consisting of a first plurality of non-overlapping segments, each of said segments consisting of a corresponding sequence of bits, and each of said segments being stored on multiple servers of said plurality of servers in the file system, said first data item identifier being based **at least in part** on the data comprising the first data item . . .

’096 Patent, at claim 81. Thus, both claims expressly recite that a “digital identifier” or “data item identifier” can be determined by processing other data, in addition to “all the data in the data item.”

**C. The Specification Confirms that Identifiers Can Be Processed Using Data Beyond Only the Data in the Data Item.**

The specification similarly confirms that a “digital” identifier” or “data item identifier” can be determined by processing other data, in addition to “all the data in the data item.” While the specification does not expressly provide definitions for “digital identifier” and “data item identifier,” the specification makes clear that the invention encompasses embodiments that use identifiers processed with data beyond just the data in the data item:

> While the invention is described herein using only the True Name of a data item as the identifier for the data item, **other preferred embodiments** use tagged, typed, categorized or classified data items and use a combination of both the True Name and the tag, type, category or class of the data item as an identifier… This is because the tags provide an additional level of uniqueness.

’791 Patent, at 13:55-67 (emphasis added). Thus, the invention contemplates at least two forms of identifiers: (1) identifiers (such as the defined term “True Names”) generated with “all the data in a data item and only the data in a data item,” and (2) identifiers generated with the data in the data item along with other data that is not part of the data item. While the latter type of identifier is not a defined “True Name,” such identifiers are still described in the specification and their use is still within the scope of the invention. This Court’s construction, which limits the scope of the invention to two embodiments disclosed, should be reconsidered in light of *Phillips.*, 415 F.3d at 1323 (“[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments”).

### D. The Patentee Did Not Clearly and Unmistakably Disclaim an Identifier That is Based on More Than All The Data in the Data Item.

Besides the claim language, as well as the specification support for multiple embodiments as to these two terms, the patentees did not clearly and unmistakably disclaim an identifier that is determined by processing more than all the data in the data item. *See Thorner v. Sony Compl. Entm't Am. LLC*, 669 F.3d 1362, 1367 (Fed Cir. 2012) ("We do not read limitations from the specification into claims; we do not redefine words. Only the patentee can do that. To constitute disclaimer, there must be a clear and unmistakable disclaimer.").

To the contrary, the patentee chose **not** to include a "digital identifier" or "data item identifier" in the portion of the specification explaining that certain identifier terms refer to the "substantially unique identifier" (which is based only on the data in the data item). *See* '791 Patent, at 6:6-8 ("In the following, the terms 'True Name', 'data identify' and 'data identifier' refers to the substantially unique data identifier for a particular data item."). Thus, rather than evidence a clear and unmistakable intent to associate the terms "digital identifier" and "data item identifier" with the "substantially unique identifier," the patentee's lexicography reflects a decision to differentiate, or at least to not correlate, the terms "digital identifier" and "data item identifier" and "substantially unique identifier." Moreover, the Defendants point to nowhere in the prosecution history in which the full breadth of these particular claims was disclaimed.

This absence of a clear and unmistakable disclaimer is significant because the Court's construction currently imposes a negative limitation—that only the data of the data item can be processed by a function to generate the identifier. *See Omega Eng'g. Inc. v. Raytek Corp.*, 334 F.3d 1314, 1332-33 (Fed Cir. 2003) (noting that a negative limitation imposed by the district court found no anchor in the claim language, the plain and ordinary meaning of the phrase, or in any express disclaimer in the specification); *see also Hyperion Solutions Corp. v. Outlooksoft*

*Corp.*, 422 F. Supp. 2d 760, 773 (E.D. Tex. 2006) (explaining that importing a negative limitation into a claim, particularly where the claim language does not contain such a limitation, is generally not favored). This negative limitation would remove from the scope of these claims some embodiments that use more than the data in the data item in generating the identifier, and thus limit the claims at issue to two express embodiments. But the specification makes clear that it describes only preferred embodiments and other embodiments are contemplated. *See e.g.*, ‘791 at 4:54-56 (“Detailed Description of the Presently Preferred Exemplary Embodiments”); *id.* at 13:46-49 (“ Note that for some less-preferred embodiments of the present invention, lower probabilities of uniqueness may be acceptable, depending on the types of applications and mechanisms used.”).

## IV. CONCLUSION

For the foregoing reasons, PersonalWeb respectfully asks that this Court grant limited reconsideration of its construction of the terms “digital identifier” and “data item identifier,” and to remove the “only the data in the data item” language from the construction. This would leave the terms defined as “an identifier for a data item generated by processing all of the data in the data item, through an algorithm that makes the identifier substantially unique.”

DATED: August 28, 2013

Respectfully submitted,

**McKOOL SMITH, P.C.**

/s/ *Samuel E. Baxter*

Samuel E. Baxter
(sbaxter@mckoolsmith.com)
Texas Bar No. 01938000
104 East Houston Street, Suite 300
P. O. Box. 0
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9095

Theodore Stevenson, III
Texas State Bar No. 19196650

tstevenson@mckoolsmith.com
David Sochia
Texas State Bar No. 00797470
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Roderick G. Dorman (CA SBN 96908)
rdorman@mckoolsmithhennigan.com
Lawrence M. Hadley (CA SBN 157728)
lhadley@mckoolsmithhennigan.com
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200
Facsimile: (213) 694-1234

***Attorneys for Plaintiff***
***PersonalWeb Technologies LLC***

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2013, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Samuel F. Baxter*__________________
Samuel F. Baxter